**D. MAX GARDNER, ESQ. (CSB No. 132489)**
**930 Truxtun Ave., Suite 203**
**Bakersfield, CA 93301**
**661-204-1421**
**dmgardner@dmaxlaw.com**

Attorney for Chapter 7 Trustee Jeffrey M. Vetter

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE:<br><br>B&B AGRI SERVICES, INC.;<br><br>DEBTOR | Bankruptcy Case No.: 2024-13719<br><br>Chapter 7<br><br>DC No: DMG-2<br><br>Date: September 29, 2026<br>Time: 1:30 p.m.<br>Place: Ctrm 13, 5th Fl<br>2500 Tulare St.<br>Fresno, CA<br>Judge: Hon. Renẽ Lastreto II |

**CHAPTER 7 TRUSTEE'S MOTION TO COMPROMISE CLAIMS AND INTEREST IN PROPERTY (BANKRUPTCY LITIGATION)**
[Bankruptcy Rule 9019]

**TO THE HONORABLE RENẼ LASTRETO II, UNITED STATES BANKRUPTCY JUDGE:**

1. This motion, if granted, will resolve three pending matters in this Chapter 7 case, which are a motion to dismiss the underlying Chapter 7 case and two adversary proceedings filed by the Trustee seeking cancellation of a UCC-1 lien and the recovery of preferences.

2. Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on December 27, 2024. Jeff Vetter is the acting Chapter 7 Trustee in this case.

3. Jurisdiction exists under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1408. The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. § 157(a) and United States District Court, Eastern District of California General Orders 182 and 223. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A)(N)&(O). This is a Motion brought pursuant to Bankruptcy Rule 9019. This is a contested matter under F.R.B.P. Rule 9014 and a Motion brought pursuant to Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California, LBR Rule 9014-1.

4. Trustee seeks approval of a settlement of two adversary proceedings filed in this Chapter 7 case, described as follows:

a. Adversary No. 25-1033, filed against Benny Parlan ("BP"). This adversary sought to recover the sum of $231,950 in preferential payments made to BP.

b. Adversary No. 25-1032, filed against Dinah Parlan ("DP"). This adversary sought to set aside a late recordation of a UCC-1 lien in DP's favor against the Debtor's personal property consisting of tools, equipment and supplies utilized in farm labor contracting together with the sum of $275,010 made in preferential payments to DP or her bookkeeping business. The value of the assets that are subject to the UCC-1 lien in favor of DP were scheduled in the sum of $300,000, however the Trustee is not certain that this is an accurate value based on my experience of auctioning property in this field. The recordation of the UCC-1 was made within 90 days of the bankruptcy filing.

5. Both of these cases were filed on July 22, 2025

6. BP is a shareholder and director of the Debtor.

7. DP is the mother of BP and handled the daily financial dealings of the Debtor over a period of time personally and through a bookkeeping business conducted in the name of AP Bookkeeping, Inc.

8. By this Motion, the Trustee also requests that the Court authorize him to execute the necessary documents to complete the settlement. A true and correct copy of the proposed Settlement Agreement is filed with this Declaration as Exhibit "A".

9. Pursuant to the Settlement Agreement, the basic terms are as follows:

a. DP will release her UCC-1 lien so that the Trustee may proceed to auction the Debtor's personal property.

b. DP will pay the lump sum of $125,000 to the estate to settle both her and BP's preference liability.

c. The parties will enter into a waiver of all known and unknown claims against each other except for payment of the $125,000 and release of the UCC-1.

d. Additionally, the Trustee will waive claims against the Debtor's former lawyers, who created and recorded the UCC-1 statement despite the fact that they had previously represented the Debtor as a corporate client. The conduct of these lawyers in assisting DP to better position herself over the claims of the non-insider creditors caused damage to the debtor-corporation, creating a conflict of interest that is actionable under California law. Nevertheless, such claims are being dropped on behalf of the estate.

10. The Trustee's position as to the *A&C Properties* factors is summarized as follows:

(a) Probability of success. The recordation of the UCC-1 and preferential payments made to BP and DP were in my opinion, "slam dunks". Review of the facts of the transactions and the conduct of the parties established that steps were undertaken to better the financial

position of the Parlans at the expense of the creditors and the elements of preferential transfers were established. The Trustee does not have exceptions to the transfers that would act as affirmative defenses. However, as set forth below, the difficulty of collection counter balances this factor.

(b) Difficulties of collection. Immediately after the preference actions were filed, DP filed a motion to dismiss the underlying Chapter 7 case on the basis that the two shareholders who initiated the filing, Brenton Morel and Martin Valdez failed to follow corporate formalities in the filing. BP and DP used multiple lawyers in the prosecution of the motion to dismiss and the motion has taken over a year to resolve. Both Brenton Morel and Martin Valdez individually retained counsel and over the course of a year, came to agree to jointly seek the dismissal of the Chapter 7 case. The insiders and their counsel have been willing to protract this matter for a long period of time at significant expense to the estate.

(c) Difficulty of litigation. In the course of prosecuting the motion to dismiss, the insiders consisting of Morel, Valdez, DP and BP negotiated what their counsel described as a decision to "voluntarily dismiss" the Chapter 7 case. The Trustee understands that the deliberations and conclusions that the insiders conducted and arrived at all have direct impact on whether the Court has cause to dismiss the Chapter 7 case. Thus, in the evidentiary hearing that was to transpire on the motion to dismiss, attorneys Golden, Altman, Feher (Debtor's former corporate attorney), and Welsh, (BP's personal attorney) would be required to testify as to why the case was decided to be dismissed. The Trustee is advised that he holds the attorney client privilege as to the reasons for dismissing the Debtor's corporate case. The Trustee does not believe that the Court will dismiss this Chapter 7 case if he takes the position that he seeks to prosecute the adversary proceeding and liquidate the assets of the estate. Given the ability of the

parties to delay this matter, the adversary proceedings had not even started. Additionally the Trustee would anticipate a fight from the attorney-witnesses if put on the stand. The length of time to get to a resolution of this case has been considered. Under the current settlement, the Trustee is at least able to proceed to auction sooner and recover a sum certain for the estate.

(d) Interest of the creditors. The Trustee believes that the settlement serves the interests of the creditors because it obtains a sum certain for the estate without the further expenditure of attorneys' fees. This matter was resolved with the assistance of Scott Belden through the BDRP process[1]. Qualified and capable lawyers were involved in reaching this decision.

11. It is the Trustee's recommendation based upon his business judgment that the requested relief in this Motion is in the best interest of the estate.

WHEREFORE, THE TRUSTEE PRAYS AS FOLLOWS:

1. That this Motion to Compromise Claims and Interests in Property be granted;
2. That the Court approve the settlement reached under the terms and conditions found in the Settlement Agreement filed as Exhibit "A" in this matter and that the Trustee be authorized to execute said Agreement; and
3. That the Court grant such relief as may be appropriate under the circumstances of this case.

Respectfully submitted,

Date: August 20, 2026

*/s/D. Max Gardner*
D. Max Gardner, Attorney for Chapter 7 Trustee Jeffrey M. Vetter

[1] There was a further snag in the settlement after the BDRP session and a dispute as to whether Dinah Parlan waived her right to file a further proof of claim. The current settlement agreement allows her to do so but the right to object to it is preserved. Normally, it is the Trustee's practice to have that condition not a part of a settlement.